## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. _____** |
| | : | |
| **v.** | : | **Violation:** |
| | : | |
| | : | **18 U.S.C. § 371 (Conspiracy)** |
| **MCC CONSTRUCTION** | : | |
| **CORPORATION,** | : | **Forfeiture:** |
| | : | **18 U.S.C. § 981(a); 28 U.S.C. § 2461(c)** |
| **Defendant.** | : | **21 U.S.C. § 853(p)** |

## I N F O R M A T I O N

The United States Attorney charges that:

### COUNT ONE-CONSPIRACY

At various times relevant to this Information:

### Introduction

1.     At all relevant times, MCC Construction Corporation ("MCC") was a construction management company and a general contractor that provided design/build, renovation/restoration, and new construction services.  It was founded in 1986, and its home office was located in Greenwood Village, Colorado, with regional offices in different parts of the country.  MCC was actively managed by Person D, Person E, Person F, and Person G, who were owners of MCC.  MCC also had passive owners who were not involved in the day-to-day operations of the company and who had no role in the conduct described herein.

2.      At all relevant times, Company 1 purported to specialize in, among other things, design build services of energy and renewable programs; general contracting and construction staffing services; and mechanical, electrical, plumbing, renovation, and carpentry.   At all relevant times, Company 1 was certified to participate in the 8(a) program and was headquartered in Illinois.   Company 1's primary business address was the home address of relatives of Person A.   For portions of the relevant period, Company 1 was also certified to participate in the Historically Underutilized Business Zone ("HUBZone") program.

3.      At all relevant times, Company 2 purported to specialize in, among other things, design build services of energy and renewable programs; general contracting and construction staffing services; and mechanical, electrical, plumbing, renovation, and carpentry.   At all relevant times, Company 2 was certified to participate in the 8(a) program.   Company 2 routinely used Company 1's business address as one of its addresses.

4.      At all relevant times, Person A resided in Illinois.   Person A was president of Company 1.

5.      At all relevant times, Person D was an officer of MCC and one of the owners of the company.

6.      At all relevant times, Person E was an officer of MCC and one of the owners of the company.

7.      For portions of the relevant period, Person F was an officer of MCC and one of the owners of the company.

8.      At all relevant times, Person G was an officer of MCC and one of the owners of the company.

9.     At all relevant times, the email communications sent in furtherance of this scheme were transmitted in interstate commerce.

## The Conspiracy and Its Objects

10.     From at least in or around January 2008 through in or around August 2013 in the District of Columbia and elsewhere, the Defendant,

## MCC CONSTRUCTION CORPORATION

and others unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed with one another and with others to commit offenses against the United States, that is,

a.     to execute and attempt to execute—in a procurement of services as prime contractors and subcontractors on contracts in which there were prime contracts with the United States, the value of several of these prime contracts being in excess of $1,000,000—a scheme and artifice with intent to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1031.

b.     to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting so to do, did cause to be sent and delivered interstate wire communications, in violation of Title 18, United States Code, Section 1343.

## Goal of the Conspiracy

11.     The goal of the conspiracy was for Defendant MCC, Company 1, Company 2, and others to enrich themselves by engaging in a conspiracy and a scheme to defraud in which they

3

obtained funds from the United States, and an agency thereof, by means of false and fraudulent pretenses, representations, and promises.

Manner and Means of the Conspiracy

9.      Defendant MCC, Company 1, Company 2, and others used the following manner and means, among others, to accomplish the objects and goal of the conspiracy:

a.      Defendant MCC partnered with Company 1 and Company 2 to gain access to contracts that were awarded through the Small Business Administration's 8(a) program. To qualify for the 8(a) program, a business must be at least 51 percent-owned and controlled by a U.S. citizen (or citizens) of good character who meet the SBA's definition of socially and economically disadvantaged. For construction contracts, the 8(a) business must perform at least 15 percent of the cost of the contract with its own employees (not including the cost of materials).

b.      Defendant MCC partnered with Company 1 to gain access to contracts that were awarded through the HUBZone program. To qualify for the HUBZone program, a company must establish that: i) it is a small business; ii) it maintains a principal office located within an area that has been designated as a HUBZone; and iii) at least 35 percent of its employees reside within designated HUBZone areas. For construction contracts, the HUBZone business must perform, at least, 15 percent of the cost of contract performance incurred for personnel on the HUBZone company's employees.

c.      Defendant MCC, Company 1, Company 2, and others concealed the fact that MCC, which was not eligible for the aforementioned SBA contracting preferences, exercised impermissible control over Company 1's and Company 2's bidding for and performance of Company 1's and Company 2's contracts.

d.      Defendant MCC, Company 1, Company 2, and others agreed that Company 1 and Company 2 would furnish all labor, equipment material safety, and supervision for every government contract that Company 1 and Company 2 subcontracted to MCC.

e.      Defendant MCC, Company 1, Company 2, and others agreed that for each government contract that Company 1 and Company 2 subcontracted to MCC, Company 1 and Company 2 would award MCC 97 percent of the value of the contract.

f.      Defendant MCC, Company 1, Company 2, and others concealed the fact that, at all relevant times, Company 1 and Company 2 were not performing, at least, 15 percent of the cost of the contract with their own employees.

g.      Defendant MCC, Company 1, Company 2, and others misrepresented that Company 1 and Company 2 were in compliance with SBA regulations pertaining to Company 1's and Company 2's contracts obtained through this scheme, including that Company 1 and Company 2 employees had performed the required percentage of work on those contracts.

## OVERT ACTS

10.     Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, MCC, Company 1, Company 2, and others committed the following overt acts, among others:

a.      On or about January 31, 2008, Person E sought, and received, Person A's permission to create email addresses that included Company 1's name in the domain name for MCC personnel to use when they were communicating with the government about contracts awarded to Company 1.  These email accounts created the false appearance that MCC personnel

were Company 1 employees and allowed MCC to communicate directly with government contracting agencies about Company 1 proposals and contracts.

      b.      On or about November 20, 2008, MCC and Company 1 agreed that for any government contract on which MCC was Company 1's subcontractor, Company 1 would forward the entire amount the government paid Company 1 to MCC.

      c.      In and around July 2, 2009, MCC and Company 1 agreed that for any government contract on which MCC was Company 1's subcontractor, MCC would furnish all labor, equipment, material safety and supervision to perform the scope of work on the contract.

      d.      Throughout the relevant period, Company 1 and Company 2 obtained the following contracts that they subcontracted to MCC with MCC obtaining the following revenue from these contracts:

| Award Recipient | Contract Name | Contract Number | Award Date | Date Complete | MCC Revenue |
|---|---|---|---|---|---|
| Company 1 | Fort Jackson | W911SE-08-D-0008 | 6/30/08 | 6/3/13 | $30,728,812 |
| Company 1 | Fresno NG-Solar | W912LA-08-C-6001 | 7/31/08 | 1/12/09 | $1,803,102 |
| Company 1 | Pennsylvania | N40085-08-C-2871 | 9/12/08 | 6/18/10 | $4,393,386 |
| Company 1 | Willow Grove | N40085-08-C-2813 | 9/29/08 | 3/13/09 | $321,161 |
| Company 1 | Mississippi | W912C6-08-P-0168 | 9/30/08 | 12/1/08 | $48,744 |
| Company 1 | Main Gate | N40085-09-C-0111 | 4/17/09 | 9/30/09 | $180,405 |
| Company 1 | GSA – SC | GS-04P-09-EXD-0047 | 6/29/09 | 4/22/13 | $558,099 |
| Company 1 | Arnold AFB | FA9101-09-D-0030 | 7/9/09 | 5/15/12 | $3,272,081 |
| Company 1 | Fort Collins | SB1341-09-CN- | 7/29/09 | 11/5/09 | $399,300 |

| | | 0093 | | | |
|---|---|---|---|---|---|
| Company 1 | New York/Buffalo | W912P4-09-D-0009 | 8/13/09 | 12/7/09 | $240,731 |
| Company 1 | Mechanicsburg | N40085-09-C-0088 | 9/29/09 | 11/8/10 | $1,239,947 |
| Company 2 | Fort Polk – IED Repair | W9127S-09-C-6013 | 9/29/09 | 6/25/10 | $91,254 |
| Company 2 | Fort Polk – Bldg. 7840 Exp. | W9127S-09-C-6015 | 9/29/09 | 9/12/10 | $346,533 |
| Company 2 | Fort Polk Secure Storage | W9127S-09-C-6017 | 9/29/09 | 9/15/10 | $268,139 |
| Company 2 | Fort Polk – Eastern Area Res. Office | W9127S-09-C-6018 | 9/30/09 | 3/31/11 | $689,131 |
| Company 2 | Fort Polk Replace Main Dist. Panels | W9127S-09-C-6016 | 10/26/09 | 9/25/10 | $912,186 |
| Company 1 | Whitman AFB | W912DQ-09-D-4015 | 12/23/09 | 2/26/13 | $10,421,780 |
| Company 2 | Fort Polk – FOB Barracks | W9127S-09-C-6019 | 12/30/09 | 11/30/11 | $1,303,948 |
| Company 2 | Pennsylvania | N40085-10-C-5862 | 3/16/10 | 10/31/11 | $1,366,711 |
| Company 2 | Substation | N40085-10-C-5863 | 3/25/10 | 12/31/11 | $1,368,296 |
| Company 1 | Coast Guard – North | HSCGG-110-D-PRV057 | 8/6/10 | 9/30/11 | $842,482 |
| Company 1 | Fish & Wildlife | 401817D026 | 9/4/10 | 3/31/12 | $561,432 |
| Company 2 | Fort Polk – Ren. Bldg. 4740 | W9127S-09-C-0292 | 9/16/10 | 3/15/11 | $90,768 |
| Company 2 | Fort Polk Design & Constr. | W9127S-09-C-6032 | 9/30/10 | 11/30/11 | $1,287,878 |
| Company 1 | Coast Guard – South | HSCG-821-D-PMVA39 | 2/9/11 | 1/31/13 | $788,895 |
| Company 2 | RI Navy/ D-F JV | N40085-10-D-9430 | 4/27/11 | 8/7/13 | $6,749,693 |
| | | | | **Total:** | **$70,274,894** |

With the exception of GS-04P-09-EXD-0047 and 401817D026, each of these contracts was restricted to either 8(a) or HUBZone firms.

        e.      Between in or around January 2008 and in or around August 2013, Company 1 and Company 2 provided no substantive services in connection with the contracts awarded through either the 8(a) or HUBZone programs.  Instead, Company 1 and Company 2 subcontracted these contracts in their entirety to MCC, played no substantive role in project delivery, and collected an approximately three percent fee for allowing their small business status to be used.

        11.    As a result of the scheme described above, MCC willingly and knowingly defrauded the United States government into awarding, at least, $70,274,894 in contracts that were intended to be awarded to valid 8(a) and Hubzone firms.  For the contracts obtained through this scheme on which MCC made a profit, MCC's profit was, at least, $1,269,294.

**(Conspiracy to Commit Major Fraud and Wire Fraud, in violation of Title 18, United States Code, Sections 371, 1031, and 1343.)**

## FORFEITURE ALLEGATION

        1.     Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendant in the amount of $1,269,294.

        2.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

CHANNING D. PHILLIPS
United States Attorney
Bar No. 415793

By:    _MATT GRAVES_ (signature)

MATT GRAVES
Bar No. DC - 481052
Assistant United States Attorneys
Fraud & Public Corruption Section
555 4th Street, N.W., Room 5227
Washington, DC 20530
202-252-7762


LISA M. PHELAN
Chief
Washington Criminal I
Antitrust Division:

KEVIN HART
JUSTIN P. MURPHY
Trial Attorneys
Washington Criminal I
Antitrust Division
United States Department of Justice
450 Fifth Street, N.W., Suite 11300
Washington, D.C. 20530